Alexander James Taylor, Esq.
**Sulaiman Law Group, Ltd.**
2500 S. Highland Ave., Ste. 200
Lombard, IL 60148
Telephone: (630) 575-8181
ataylor@sulaimanlaw.com
Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**FRESNO DIVISION**

| | |
|---|---|
| FRANCESCA M. AIELLO,<br><br>Plaintiff,<br><br>v.<br><br>RENT RECOVERY SOLUTIONS, LLC and MANCO ABBOTT, INC., doing business as, THE EMERSON,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br>**1. FAIR DEBT COLLECTION PRACTICES ACT,**<br>**2. REGULATION F, and**<br>**3. ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT**<br><br>**JURY TRIAL DEMANDED** |

**NOW COMES** Francesca M. Aiello ("Plaintiff"), by and through her undersigned counsel, complaining of the Defendants, Rent Recovery Solutions, LLC and Manco Abbott, Inc., doing business as, The Emerson (collectively "Defendants") as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action seeking redress for Defendants' violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 USC §1692 *et. seq.*, Regulation F ("REG F") pursuant to 12 CFR 1006 *et seq.,* and violations of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA") pursuant to Cal. Civ. Code §1788.

1

**JURISDICTION AND VENUE**

2. Subject matter jurisdiction is conferred upon this Court by the FDCPA and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff reside in the Eastern District of California, Defendant conducts business in the Eastern District of California, and a substantial portion of the events or omissions giving rise to the claims occurred within the Eastern District of California.

**PARTIES**

4. Plaintiff is a natural person, over 18-years-of-age, who at all times relevant resided in Clovis, California.

5. Defendant Rent Recovery Solutions, LLC ("RRS") is a third-party debt collector who regularly attempts to collect debts from consumers originally owed to third parties. Defendant organized under the laws of the state of Georgia and maintains its principal place of business at 1945 the Exchange SE, Suite 120, Atlanta, Georgia 30339. Defendant uses the mail and telephone for the principal purpose of collecting debts from consumers on a nationwide basis, including consumers in California.

6. Defendant Manco Abbott, Inc. d/b/a The Emerson ("The Emerson") is a prominent commercial and property management company that manages The Emerson luxury apartment complex located in Clovis, California. This Defendant maintains a principal place of business at 1398 W. Herndon Avenue, Suite 105, Fresno, California 93711.

7. Defendants acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

**FACTUAL ALLEGATIONS**

8. Prior to the events giving rise to this action, Plaintiff accepted a position as a Travel Therapist located in California.

9. On September 8, 2020, Plaintiff and her friend, Megan Johnston ("Megan"), signed a residential apartment lease with The Emerson in Clovis, California through October 7, 2021.

10. On July 29, 2021, Plaintiff met with The Emerson's office director, Kimberly.

11. During Plaintiff's discussion with Kimberly, Plaintiff informed her that she had received a new job assignment and would be leaving California, before her lease expired.

12. Kimberly informed the Plaintiff that she would need to fill out a "30-Day Notice of Resident's Intent to Vacate" and turn the keys into The Emerson, which would officially terminate the lease.

13. Subsequently, Plaintiff and Kimberly discussed that Plaintiff's rent was paid through the end of the lease term and that she was not terminating her lease early. Plaintiff simply intended to move out of the apartment early.

14. At which time Kimberly reviewed The Emerson's billing system and confirmed that $4,951.00 was available in The Emerson's payment portal to pay the Plaintiff's rent through the end of the lease.

15. Kimberly informed Plaintiff where she could leave the keys, garage access cards and garage doors openers upon their departure.

16. Kimberly also provided a 30-Day Notice Resident's Intent to Vacate Form, which Plaintiff and Megan signed and dated.

17. Prior to concluding the meeting with Kimberly, Plaintiff again confirmed that (1) Plaintiff was not terminating her lease early, (2) the subject lease was paid in full through The

Emerson's payment portal, and (3) Plaintiff and Megan Johnston were to leave their keys, access cards and garage door openers in the apartment and were free to move out at any time.

18. On August 4, 2021, Plaintiff's father spoke with Kimberly and informed her that the apartment would be vacant later that evening. During that conversation, Kimberly confirmed that there was no further paperwork needed from Plaintiff or Megan at that time.

19. On August 4, 2021, at approximately 6:30 pm, Plaintiff and Megan left the apartment for the last time, leaving the keys, garage opener and access cards on the kitchen counter as promised.

20. On August 10, 2021, Plaintiff called The Emerson and confirmed with the office staff that she had vacated the apartment and The Emerson had retrieved the keys, access cards and garage door openers from the apartment.

21. At this time, Plaintiff understood that she was relieved of all obligations with The Emerson and was leaving the subject property with a balance of $0 owed.

22. The following month, in September 2021, Plaintiff received a notice from The Emerson alleging an amount remaining owed of $3,325.35 claiming that Plaintiff owed additional sums for lease termination, cleanup, paint and a concession fee ("alleged debt").

23. In an effort to resolve the confusion, Plaintiff called The Emerson's corporate office. However, Plaintiff was referred back to the apartment complex and refused to speak with her.

24. Plaintiff called The Emerson, who also refused to speak with her and ultimately began refusing her calls.

25. Sometime thereafter, RRS acquired the right to collect on the alleged debt after it was allegedly in default.

26. Soon thereafter, Plaintiff received a collection letter from RSS ("collection letter").

27. In March 2023, Plaintiff began receiving collection calls from Defendant RRS attempting to collect on the alleged debt.

28. On March 21, 2023, Plaintiff communicated with Thomas Moore, the Assistant Community Manager of The Emerson via electronic mail ("email").

29. In her email to Mr. Moore, she advised of the situation not being handled in the manner in which it was discussed in person at The Emerson and the resulting collection efforts regarding the alleged debt.

30. Plaintiff attached supporting documentation to her email including the Lease Agreement, proof of her paid rent through the final term of the subject lease, documentation regarding the relevant security deposit and checkout and the collection letter she received from RRS.

31. On March 28, 2023, Mr. Moore communicated with Plaintiff via email stating that he empathized with Plaintiff's frustration, but ultimately informed her that the charges reflected in the collection letter were accurate, despite multiple other conversations with The Emerson to the contrary.

32. Specifically, Mr. Moore indicated that because Plaintiff left her keys in the apartment as instructed by Kimberly, The Emerson was considering the lease terminated early, and therefore asserting additional fees and rent owed, even though Plaintiff's rent was paid current through the end of term of the lease.

33. Near the end of March 2023, Plaintiff submitted a formal dispute with RRS. At which time, RRS advised Plaintiff it would contact her with the results at soon as the dispute was investigated.

34. On April 5, 2023, Plaintiff received correspondence from RRS stating that RRS had contacted The Emerson regarding her dispute and The Emerson had agreed to deduct $665.07 from the amount owed for a new balance of $2,660.28.

35. RRS advised Plaintiff to contact The Emerson to pay the balance by May 15, 2023.

36. On April 10, 2023, feeling that the dispute was still unresolved as to the alleged debt, Plaintiff filed a formal consumer complaint with the Attorney General.

37. The Attorney General responded stating that it was not authorized to provide legal assistance and advised Plaintiff to send a debt validation letter.

38. Plaintiff sent the recommended debt validation letter to RSS on April 28, 2023. Plaintiff sent a copy of the debt validation letter as a courtesy to The Emerson as well.

39. To date, Plaintiff has not received a response to her validation letter.

40. Despite not owing the alleged debt as it was paid in full and she did not terminate her lease early, Defendants have continued to attempt to collect the alleged debt from Plaintiff by reporting inaccurate and materially misleading information to one or more third parties, including each of the major credit reporting agencies.

41. Because Plaintiff is a traveling therapist, she regularly applies for new housing and is concerned that the alleged debt will decrease her chances of being approved for suitable housing at no fault of her own.

42. Defendant's misleading conduct has severely disrupted Plaintiff's daily life and general well-being as Plaintiff constantly feared serious consequences if she did not pay the additional sums that the Defendants were attempting to collect from her.

43. Concerned about the violations of her rights, Plaintiff was forced to seek the assistance of counsel to file this action to prevent Defendant from further deception in the future, thus incurring costs and expenses.

# DAMAGES

44. Defendants' wanton and malicious conduct of attempting to collect on a debt that is not owed has severely impacted Plaintiff's life and general well-being.

45. As a result of Defendants' conduct, Plaintiff has suffered various types of damages as set forth herein, including decreased credit scores and creditworthiness, humiliation, mental anguish and emotional distress.

46. Due to Defendant's unethical collection efforts, Plaintiff was forced to retain counsel to correct Defendants' errors.

### COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
*(15 U.S.C. §1692 et. seq.)*
*Against Defendant RSS*

47. Plaintiff restates and realleges all previous paragraphs of this Complaint as though fully set forth herein.

48. Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

49. The alleged subject debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

50. RSS is a "debt collector" as defined by §1692a(6) because its primary business is the collection of delinquent debts and it regularly collects debts and uses the mail, the telephones, and credit reporting to collect defaulted accounts allegedly owed to a third party.

51. Moreover, RSS is a "debt collector" because it acquired rights to the subject debt after it was allegedly in default. 15 U.S.C. §1692a(6).

52. RSS used credit reporting to attempt to collect the subject debt and, as such, engaged in "communications" as defined in FDCPA §1692a(2).

53. RSS violated 15 U.S.C. §1692e, e(2), e(8), e(10) and f through its unlawful debt collection practices.

    **a.    Violations of FDCPA § 1692e**

54. Pursuant to 15 U.S.C. §1692e of the FDCPA, a debt collection is prohibited from making "any false, deceptive, or misleading representation" in connection with the collection of a debt.

55. RSS violated §1692e(2) when it falsely misrepresented the character, amount, or legal status of the alleged subject debt. After acquiring the rights to the subject debt, RSS attempted to collect on a debt not owed by the Plaintiff. Plaintiff moved out of her unit at the Emerson with her rent paid through the end of the lease with a remaining balance of $0. However, RSS called Plaintiff and sent Plaintiff collection letters attempting to collect additional sums from her. The additional sums were patently incorrect because at no point did Plaintiff owe The Emerson anything after she moved out of her unit.

56. RSS violated §1692e(8) by communicating false and inaccurate information that it knew or should have known to be false, including failing to communicate to the three major credit reporting agencies that Plaintiff disputed the subject debt. Specifically, despite not owing the alleged debt as it was paid in full and she did not terminate her lease early, Defendant RSS has continued to attempt to collect the alleged debt from Plaintiff by reporting inaccurate and materially misleading information to one or more third parties, including each of the major credit reporting agencies.

57. RSS violated §1692e(10) by using false, deceptive, and misleading representations in connection to collection of the alleged subject debt. In order to secure payments on the alleged debt, RSS falsely misrepresented Plaintiff's legal obligation to pay the alleged debt despite Plaintiff not owning the alleged debt and having no legal obligation to pay.

58. As an experienced debt collector, RSS knew or should have known the ramifications of using deceptive and misleading means to attempt to collect a debt not owed.

    **b.    Violations of FDCPA § 1692f**

59. RSS violated §1692f when it used unfair and unconscionable means to collect the alleged debt. The alleged debt was not owed at the time RSS demanded payment, but RSS demanded Plaintiff make a payment on subject debt even though she did not owe it. After Plaintiff and The Emerson agreed that Plaintiff could move out of her apartment early without terminating her lease, Plaintiff left the unit with a remaining balance of $0.

60. As an experienced debt collector, RSS knew or should have known the ramifications of collecting on debts not owed at the time it made demands for payment.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor as follows:

    a.    Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

    b.    Enjoin Defendant RSS from continuing to credit report the alleged debt and enjoin RSS from further contacting Plaintiff;

    c.    Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

    d.    Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

    e.    Award any other relief as the Honorable Court deems just and proper.

## COUNT II - VIOLATIONS OF REGULATION F
### *(12 CFR 1600 et seq.)*
### *Against Defendant RSS*

61. Plaintiff restates and realleges all previous paragraphs of this Complaint as though fully set forth herein.

62. Plaintiff is a "consumer" as defined by Regulation F §1006.2(e)

63. Defendant RSS is a "third party collector" as defined by Regulation F §1006.2(i)(1).

64. The subject debt is a "debt" and a "consumer debt" as defined by Regulation F §1006.2(f) as it is an obligation, or alleged obligation, arising from a transaction for personal, family, or household purposes.

   **a.** **Violations of Regulation F §1006.18**

65. Section 1006.18(b)(2) prohibits a debt collector from falsely representing "the character, amount, or legal status of any debt." 12 CFR § 1006.18(b)(2).

66. RSS violated §1006.18(b)(2) by misrepresenting Plaintiff's legal obligation to pay subject debt despite Plaintiff not owning the subject debt and having no legal obligation to pay.

67. RSS's deceptive and misleading behavior harmed Plaintiff and stripped her of her rights under the FDCPA and Regulation F.

68. As alleged above, Plaintiff was harmed by RSS's inaccurate and materially misleading collection of the alleged debt.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor as follows:

   a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute, thus violating the Fair Debt Collection Practices Act;

   b. Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

c. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3); and

d. Award any other relief as the Honorable Court deems just and proper.

### COUNT III – VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT
**Against both Defendants**

69. Plaintiff restates and realleges all previous paragraphs of this Complaint as though fully set forth herein.

70. Plaintiff is a "person" as defined by Cal. Civ. Code §1788.2(g).

71. The alleged debt is a "debt" and "consumer debt" as defined by Cal. Civ. Code § 1788.2(d) and (f).

72. Defendants are "debt collector(s)" as defined by Cal. Civ. Code §1788.2(c).

**a. Violations of RFDCPA §1788.17**

73. The RFDCPA, pursuant to Cal. Civ. Code § 1788.17 states that "Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Section 1692b to 1692j, inclusive of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code."

74. As outlined above, through their conduct in attempting to collection upon the alleged debt, Defendants violated 1788.17; and 15 U.S.C. §§1692e, e(2), e(8), e(10) and f of the FDCPA. Therefore, Defendants engaged in noncompliant conduct in its attempts to collect a debt not owed from Plaintiff, in violation of the RFDCPA.

75. Defendants willfully and knowingly violated the RFDCPA through its unlawful collection efforts. Defendants' willful and knowing violations of the RFDCPA should trigger this Honorable Court's ability to award Plaintiff statutory damages of up to $1,000.00, as provided under Cal. Civ. Code § 1788.30(b).

76. As alleged above, Plaintiff was harmed by Defendants' collection attempts of the alleged debt.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Award Plaintiff actual damages, pursuant to Cal. Civ. Code § 1788.30(a);

c. Award Plaintiff statutory damages up to $1,000.00, pursuant to Cal. Civ. Code §1788.30(b);

d. Award Plaintiff costs and reasonable attorney fees as provided pursuant to Cal. Civ. Code § 1788.30(c); and

e. Award any other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: October 31, 2023            Respectfully Submitted,

*/s/ Alexander James Taylor*
Alexander James Taylor, Esq.
Sulaiman Law Group, Ltd.
2500 S. Highland Ave., Ste. 200
Lombard, IL 60148
Telephone: (630) 575-8181
ataylor@sulaimanlaw.com
*Counsel for Plaintiff*